UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JOHN W. DAVIS,  Case No. 23-10921-t13

    Debtor.

## OPINION

    Before the Court is whether to confirm Debtor's chapter 13 plan. The chapter 13 trustee objected to confirmation because the Plan separately classifies Debtor's student loan debt and treats it much more favorably than Debtor's other unsecured debt. The trustee also objected to the proposed payment of interest on the student loan debt. The Court concludes that the Debtor has not carried his burden of showing that the separate classification and favored treatment of the student loan debt is "fair" discrimination, nor that the proposed interest payment is permissible. His plan therefore cannot be confirmed.

A.    Facts.[1]

    Debtor and the trustee have asked the Court to rule based on the facts that can be gleaned from the current record.[2] Therefore, for the limited purpose of ruling on the confirmation of the Debtor's chapter 13 plan, the Court finds:

---

[1] Some of the Court's findings may be in the discussion section of the opinion.
[2] The Court takes judicial notice of its docket in this case and Debtor's three prior bankruptcy cases filed in this district. *See Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings."); and *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.") In addition, the Court treats the representations made by Debtor in his bankruptcy schedules as admissible admissions.

Debtor filed this case under chapter 7 on October 19, 2023. It is his fourth bankruptcy case in this district.[3] Debtor is married but filed an individual petition. Less than two months into the case, the Debtor was granted leave to convert the case to Chapter 13. Debtor is not eligible for a Chapter 7 discharge.[4]

Debtor filed bankruptcy schedules and a Statement of Financial Affairs on the petition date. On schedule H he listed his non-filing spouse as a codebtor on one debt: a $969[5] credit card debt to Merrick Bank. The schedules show no secured debt, no priority debt, about $12,100 in student loan debt, and about $15,800 in credit card debt.

The bar date for non-governmental creditors passed on February 9, 2024. The claims filed total $22,772, all of which are non-priority, unsecured claims. Three student loans held by the United States Department of Education (the "Department") total $12,148. The remainder ($10,624) is credit card debt.

In its proof of claim, the Department admits that that the student loan debt is unsecured and not subject to a right of setoff. Attached to the proof of claim is a computer printout that contains the following information:

| Loan # | Origination date | Original loan amount | Maturity date | Interest rate | Petition date Principal | Petition date accrued interest | Petition date total |
|---|---|---|---|---|---|---|---|
| 1 | 3/22/10 | $3,500 | 1/7/29 | 5.6% | $3,698 | $363 | $4,061 |
| 2 | 3/22/10 | $4,000 | 1/7/29 | 6.8% | $5,308 | $82 | $5,390 |
| 3 | 3/22/10 | $2,000 | 1/7/29 | 6.8% | $2,656 | $41 | $2,697 |
| Total[6] | | $9,500 | | | $11,663 | $486 | $12,148 |

---

[3] 96-10203 (chapter 7; standard discharge); 05-13718 (chapter 7; standard discharge) 18-11497 (chapter 7, filed June 15, 2018; standard discharge).
[4] To obtain a chapter 7 discharge, Debtor would have to dismiss this case and refile a chapter 7 case after June 15, 2026. *See* § 727(a)(8).
[5] All dollar figures are rounded to the nearest dollar.
[6] The totals are not listed on the attachment but calculated as simple sums by the Court.

The printout states that the delinquency amount as of 12/18/23 was $0.

As reflected on schedule H, Debtor's wife is not liable for the student loan debt. Supporting this finding is the fact that Debtor's 2018 bankruptcy schedules, filed when Debtor was unmarried, disclose student loan debt of $12,994.[7] The Court infers that Debtor married his non-filing spouse sometime between June 2018 and October 2023.

The student loans mature in January 2029. There is nothing in the record evidencing the original repayment terms for the student loans. The first page of a "Master Promissory Note" is attached to the proof of claim but does not have payment terms.

Per schedule I, Debtor receives $1,511 per month in Social Security benefits as his sole source of income. His wife's take-home pay from her job at Burger King is $3,117 per month. In addition, she receives $1,105 per month from Social Security. Total take-home income for the household is $5,733. Debtor's schedule J monthly household expenses, apart from a student loan payment of $50, total $5,715. This figure includes $50 for charitable contributions and $1,237 for college and other educational costs.

Debtor paid counsel $1,300 pre-petition. Counsel estimates that he will charge at additional $800 through plan confirmation, which would be paid from plan funds. The trustee would be paid her normal fee for all plan disbursements. On a total plan "base" of $3,000, the trustee fees would be about $300.

On December 7, 2023, Debtor filed his chapter 13 plan. In the plan, Debtor proposes to pay $75 per month for 40 months, for a total of $3,000. The Debtor's last payment would be in or

---

[7] There is a line in the Department's computer printout that says "PLUS CONSOL SPOUSAL CONSOL" the significance of which is unclear. This cryptic reference is insufficient to support a finding of spousal liability.

around March 2027. The plan classifies the student loans separately from the credit card debt. It provides:

> **6.1 Separately Classified Claims Paid by the Trustee.**
>
> The debtor(s) will maintain installment payments and cure any default in payments on the unsecured claims listed below on which the last payment is due after the final plan payment. These payments will be disbursed by the trustee

| Creditor | Collateral | Secured or Unsecured | Estimated Claim amount | Interest Rate |
|---|---|---|---|---|
| Dept of ED/Nelnet | SS benefit levy | unsecured | $4,098 | 1% |
| Dept of ED/Nelnet | SS benefit levy | unsecured | $5,342 | 1% |
| Dept of ED/Nelnet | SS benefit levy | unsecured | $2,673 | 1% |

There is no evidence in the record of what amount is required to "maintain installment payments and cure any default in payments." Debtor's schedule J lists monthly student loan payments of $50/month, which is about what the Department would receive from Debtor's $75 monthly plan payments, after payment of trustee and attorney fees.[8] Thus, if as it appears the monthly "maintain and cure" payments to the Department must be $48 or more, the credit card creditors would receive nothing.

The current student loan balances indicate that Debtor has paid something less than interest only for the last 14 years.[9] There is no evidence in the record about Debtor's payment history, what the payment schedule was, why Debtor thinks he is in default, or any adverse consequences if the default remains uncured.[10] There is no evidence that, prepetition, Debtor had a payment plan for the student loans, nor what any such payment plan terms were.

---

[8] On average, the $75 plan payment likely would be distributed approximately $20 to counsel ($20 x 40 = $800); $48 to the Department; and $7 to the trustee.
[9] On the other hand, Debtor's schedules from his last case and this case show that between June 2018 and October 2023, Debtor paid down the principal balance of the loans by $846.
[10] The Department admits in its proof of claim that the loans were not in default on the petition date.

The plan proposes to pay 1% interest on the student loans, rather than the stated interest rate of 5.6% or 6.8%. The difference is not explained.

The trustee timely objected to the Plan. She argues that separately classifying student loans and preferring them to the credit card debt renders the plan unconfirmable because it "discriminates unfairly," which is prohibited by § 1322(b)(1).[11] The trustee also argues that § 1322(b)(10) prohibits Debtor from paying interest on the student loan debt unless the credit card debts are paid in full.

B.  The Interplay of §§ 1322(b)(1), (b)(5), and (b)(10).

The dispute before the Court concerns the three subsections of § 1322(b):

(b) Subject to subsections (a) and (c) of this section, the plan may

> (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated;
> . . .
> (5) provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim . . . on which the last payment is due after the date on which the final payment under the plan is due;
> . . .
> (10) provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims . . . .

Here, Debtor invokes § 1322(b)(5) to cure an alleged default on his unsecured student loan payment plan.[12] The subsection allows that. However, any cure under (b)(5) must not run afoul of the unfair discrimination prohibition in (b)(1). *See, e.g., In re Edmonds,* 444 B.R. 898, 900 (Bankr.

---

[11] Unless otherwise indicated, all statutory references are to 11 U.S.C.
[12] Debtor asserts that his plan "cures his defaulted student loans, with interest," and "will correct the default by catching up on the payments under a revised payment schedule." Elsewhere Debtor describes his plan as a "cure-and-maintenance Chapter 13 plan."

E.D. Wis. 2010) (§§ 1322(b)(1) and (5) must be read in conjunction; separate classification of student loan debt not permissible if it unfairly discriminates); *In re Pracht,* 464 B.R. 486, 490 (Bankr. M.D. Ga. 2012) (11 U.S.C. § 1322(b)(5) does not trump § 1322(b)(1)); *In re Boscaccy,* 442 B.R. 501, 507 (Bankr. N.D. Miss. 2010) (unfair discrimination rule in § 1322(b)(5) must be applied to creditor treatment under § 1322(b)(1)); *In re Harding,* 423 B.R. 568, 571 (Bankr. S.D. Fla. 2010) (separately classifying student loans as long-term debt not permissible when it would result in unfair discrimination); *In re Pora,* 353 B.R. 247, 252 (Bankr. N.D. Cal. 2006) (long term debts not excluded from the unfair discrimination requirement of § 1322(b)(5)); *In re Labib–Kiyarash,* 271 B.R. 189, 195 (9th Cir. BAP 2001) (to the same effect); *In re Dyer*, 2015 WL 430288, at *3 (Bankr. W.D. La.) (same); *In re Precise,* 501 B.R. 67, 72 (Bankr. E.D. Pa. 2013) (same); *In re Beida,* 315 B.R. 477, 487 (N.D. Ill. 2004) (same); *In re Simmons,* 288 B.R. 737, 749 (Bankr. N.D. Tex. 2003) (same).

Similarly, if a debtor wishes to cure a student loan payment plan default pursuant to § 1322(b)(5) by, inter alia, paying interest, he must comply with § 1322(b)(10) and pay all allowed claims in full. *See, e.g., In re Stull*, 489 B.R. 217 (Bankr. D. Kan. 2013):

> This language is plain: in the absence of "full payment of all allowed claims," an unsecured non-dischargeable claim may not receive interest. In *Kubeczko,* [*In re Kubeczko*, 2012 WL 2685115 (Bankr. D. Colo.)] the debtor proposed to pay interest on the student loan claims, arguing that paying interest was a necessary component of curing the default and maintaining the payments on this long-term debt. The court there concluded that the later-enacted and very specific terms of (b)(10) trump the earlier and more general provisions of § 1322(b)(5).

*Id.* at 223. *Stull* was quoted and followed in *Precise*:

> as the debtor's obligation to ECMC [the student loan creditor] is nondischargeable under section 1328(a), she is not authorized to pay interest to this creditor unless other creditors are paid in full. See *In re Stull*, 489 B.R. at 223 ("This language is plain: in the absence of 'full payment of all allowed claims,' an unsecured non-dischargeable claim may not receive interest.")

501 B.R. at 75; *see also Edmonds*, 444 B.R. at 902 (plan that proposed to pay post-petition interest on student loan debt violates § 1322(b)(10)); *In re Monahan*, 497 B.R. 642, 648 (1st Cir. BAP 2013) ("a debtor can provide for the payment of post-petition interest on nondischargeable claims *only* if the debtor proposes a '100% plan,' and only if the debtor has excess disposable income with which to do so. Such situations are rare."); and *In re Ladona*, 2017 WL 2437233, at *3 (Bankr. D.N.H.) (citing *Monahan* with approval).

In general, the case law supports the commonsense notion that while chapter 13 debtors may cure student loan payment plan defaults using § 1322(b)(5), they must not violate §§ 1322(b)(1) or (b)(10) in doing so.

C. The "unfair discrimination" prohibition of § 1322(b)(1).

Section 1322(b)(1) prohibits a chapter 13 plan from discriminating unfairly against one class of unsecured claims over another class. The Bankruptcy Code does not say, however, what "unfair discrimination" is.

> Section 1322(b) of the Bankruptcy Code, while forbidding as we have said classifications that discriminate unfairly against creditors, does not explain what "unfairly" means in this context. The courts have striven to formulate a more precise standard for determining the legitimacy of classifications proposed by Chapter 13 debtors, but without success.

*In re Crawford*, 324 F.3d 539, 541-42 (7th Cir. 2002). In *Crawford,* Judge Posner then discussed various tests courts have adopted, including the *Leser/Wolff* test,[13] variations on that test, and the *Brown* test.[14] He finds fault with all the tests, opining that "success has not attended efforts to give . . . structure to the classification provision of Chapter 13." *Id.* at 542. Judge Posner also states:

---

[13] *See In re Leser*, 939 F.2d 669, 672 (8th Cir.1991), and *In re Wolff*, 22 B.R. 510, 512 (9th Cir. BAP 1982).
[14] *In re Brown,* 152 B.R. 232, 237–38 (Bankr. N.D. Ill.), reversed under the name *McCullough v. Brown,* 162 B.R. 506 (N.D. Ill. 1993).

> We haven't been able to think of a good test ourselves. We conclude, at least provisionally, that this is one of those areas of the law in which it is not possible to do better than to instruct the first-line decision maker, the bankruptcy judge, to seek a result that is reasonable in light of the purposes of the relevant law, which in this case is Chapter 13 of the Bankruptcy Code; and to uphold his determination unless it is unreasonable (an abuse of discretion).

*Id*. The Court concludes that Judge Posner's analysis was and remains cogent, and so will not adopt any of the "unfair discrimination" tests. Nevertheless, the Court believes that the following considerations are useful when ruling on an "unfair discrimination" challenge.

1. <u>Burden of Proof</u>. Debtors seeking confirmation of a chapter 13 plan have the burden of proof to show that the plan meets the confirmation requirements in § 1325(a). *See, e.g., Alexander v. Hardeman (In re Alexander)*, 363 B.R. 917, 921-22 (10th Cir. BAP 2007) ("[T]he proponent of a chapter 13 plan has the burden of proof to show that the § 1325(a) tests have been met."); *In re Bennett*, 615 B.R. 384, 394 (Bankr. N.D.N.Y. 2020) (same); *Kane,* 603 B.R. at 493-94 n.8 (same, citing *Alexander*).

Similarly, the burden of proof is on the debtor to show that his proposed preferential treatment of student loan debt is not unfair discrimination. *See, e.g., In re Sharp*, 415 B.R. 803, 808 n. 13 (Bankr. D. Colo. 2009) (citing *In re Bentley*, 266 B.R. 229, 240 (1st Cir. BAP 2001)); *In re Applegarth*, 221 B.R. 914, 916 (Bankr. M.D. Fla. 1998); *In re Chacon*, 223 B.R. 917, 922 (Bankr. W.D. Tex. 1998).

2. <u>Discretion</u>. Bankruptcy courts have wide discretion to determine whether a plan's proposed discrimination is unfair. *See, e.g., In re Knowles,* 501 B.R. 409, 415 (Bankr. D. Kan. 2013) (wide discretion); *Labib-Kiyarash,* 271 B.R. at 196 (same); *Kane*, 603 B.R. at 494 (same); and *In re Groves,* 39 F.3d 212, 214 (8th Cir. 1994) (broad discretion).

3. <u>Purpose of the discrimination</u>. Often a debtor wants to pay as much as possible on nondischargeable debt and as little as possible on dischargeable debt. A chapter 13 plan drafted to

achieve this result separately classifies the nondischargeable debt and treats it more favorably. If the only reason for the discrimination is the desire to pay down nondischargeable debt, most bankruptcy courts find it unfair.[15]

On the other hand, when it is clear that a debtor is doing her best to pay creditors pro rata, but that discrimination is necessary to achieve an important and legitimate end, then bankruptcy courts sometimes conclude that the discrimination is fair. The clearest example, given in *Crawford*, is a case where "if without classification the debtor is unlikely to be able to fulfill a Chapter 13 plan and the result will be to make his creditors as a whole worse off than they would be without classification, then classification will be a win-win outcome." 324 F.3d at 543. *See also In re Davis*, 209 B.R. 893, 896 (Bankr. N.D. Ill. 1997) (separate classification of landlord necessary to preserve below market lease and provide housing for debtor); *In re Ross*, 161 B.R. 36, 38 (N.D. Ill. 1993) (favorable treatment of debt co-signed by employer approved because the employer was the source of all future plan payments); *In re Kalfayan*, 415 B.R. 907, 910 (Bankr. S.D. Fla. 2009) (separate classification not unfair when benefited very creditors who were being discriminated against; debtor risked losing optometry license under state law if behind on student loan payments); and *In re Belton*, 2016 WL 7011570, at *7-8 (Bankr. D.S.C.) (discrimination was fair

---

[15] *See, e.g.*, *In re Chandler*, 210 B.R. 898, 902-03 (Bankr. D.N.H. 1997) (to the extent the debtors' proposed separate classification of student loan debt is because it is nondischargeable, that basis constitutes unfair discrimination); *In re Kaminski*, 387 B.R. 190, 197 (Bankr. N.D. Ohio 2008) (fact of nondischargeability does not mean that the debtor has the right to treat the claim differently); *In re Thibodeau*, 248 B.R. 699, 703 (Bankr. D. Mass. 2000) (well recognized that nondischargeability of student loan debt is not a sufficient ground for separate classification and more favorable treatment); *In re Copeland*, 742 F.3d 811, 814 (8th Cir. 2014) (same); *In re Lush*, 544 B.R. 575, 583 (Bankr. N.D. Miss. 2015) (same); *In re Harmon*, 446 B.R. 721, 729-30 (Bankr. E.D. Pa. 2011) (same); *In re Simmons*, 288 B.R. 737, 748 (Bankr. N.D. Tex. 2003) (same); *In re Anderson*, 173 B.R. 226, 230 (Bankr. D. Colo. 1993) (same); *In re Colfer*, 159 B.R. 602, 608 (Bankr. D. Me. 1993) (same); *In re Tucker*, 150 B.R. 203, 205 (Bankr. N.D. Ohio 1992) (same); and *In re Saulter*, 133 B.R. 148, 149 (Bankr. W.D. Mo. 1991) (same).

because employers were reluctant to hire debtor, a paralegal, while her student loan was in default, and she made a substantial voluntary commitment to pay more into her plan so general unsecured creditors would receive a dividend).

4. <u>Are the discriminatory payments from debtor's projected disposable income or from optional, additional amounts</u>? The gist of the *Bentley* "baseline" test[16] is that it is okay for a debtor to favor one unsecured creditor over others if he does so with payments he is not required to make. Thus, for example, if a debtor's projected disposable income is $500 a month but the debtor pays an extra $100 a month to a particular creditor, that is not unfair discrimination, so long as the $500 is apportioned pro rata among all unsecured creditors. Similarly, if a debtor sells an exempt asset and pays the net proceeds to a particular creditor, that is not unfair discrimination. *See, e.g., In re Kindle,* 580 B.R. 443, 451 (Bankr. D.S.C. 2017) ("Debtors are voluntarily contributing their discretionary income (the difference between their means test disposable income and their Schedule J disposable income) to increase the amount paid to those creditors."); and *Stull*, 489 B.R. at 221 (above-median debtor's chapter 13 plan to separately classify and pay a non-dischargeable obligation from income earned in excess of the projected disposable income committed to pay unsecured debt does not unfairly discriminate).

5. <u>Unusual circumstances</u>. There may be unusual circumstances that render fair what appears to be unfair discrimination. In *In re Engen*, for example, debtors separately classified and favored their nondischargeable student loan debt. Although the proposal appeared unfairly discriminatory on its face, Judge Berger confirmed the plan because, prepetition, debtors had paid

---

[16] *In re Bentley,* 266 B.R. 229, 240–42 (1st Cir. BAP 2001). The *Bentley* baseline test has been used in several Tenth Circuit bankruptcy decisions. *See, e.g., Kane*, 603 B.R. at 494; *Knowles*, 501 B.R. at 416-17; *In re Salazar*, 543 B.R. 669, 675 (Bankr. D. Kan 2015); *Stull*, 489 B.R. at 220-21; and *In re Engen*, 561 B.R. 523, 539 (Bankr. D. Kan. 2016).

$78,630 to their non-student loan unsecured creditors. Given the prepetition "reverse discrimination," Judge Berger held that the plan treatment was fair. The unusual facts prompted Judge Berger, citing *Crawford*, to lean toward a "totality of the circumstances" standard. 561 B.R. at 537.

D.  Analyzing the Alleged "Unfair Discrimination" in This Case.

1.  Why the discrimination? Debtor's proposed plan seems to favor the Department simply because his student loans are nondischargeable. Debtor makes several arguments attempting to justify the disparate treatment.

First, he argues that "the plan only cures the student loan default and does not pay student loans in full and is not a classification solely on the basis of a codebtor and provides for a reasonable dividend to other unsecured claims under the circumstances." This argument is not persuasive. There is no evidence Debtor is in default; the Department says he is not. Further, there is no evidence the plan would cure any default, nor is there evidence of a codebtor. Finally, the plan does not propose to pay *any* dividend to the credit card creditors.

Second, Debtor argues that his "plan provides all unsecured claims more than they would recover in a liquidation." That is not true—the credit card creditors get nothing under his plan, which is not more than the nothing they would get in a liquidation. Moreover, what the credit card creditors would get in a chapter 7 liquidation misses the point; what is important is what the creditors would get in a chapter 13 if they weren't discriminated against.

Third, Debtor asserts that the plan serves a valid interest of Debtor by curing the defaulted student loans. The argument lacks merit because there is no evidence of a default. Rather, the only evidence (i.e., the Department's proof of claim) is that the student loan debt was not in default on the petition date.

-11-
Case 23-10921-t13    Doc 39    Filed 05/24/24    Entered 05/24/24 13:17:44 Page 11 of 15

Fourth, Debtor argues at some length that the disparate treatment is needed to avoid a setoff of his or his wife's social security payments.[17] The argument lacks merit. Setoff rights must be timely asserted or they will be lost. *See, e.g., United States v. Continental Airlines (In re Continental Airlines)*, 134 F.3d 536, 542 (3d Cir. 1998) (post-confirmation right to setoff lost because it was not timely asserted in the proof of claim); and *United States v. Norton*, 717 F.2d 767, 774 (3d Cir. 1983) (chapter 13 plan precluded IRS from setting off because estate property vested in the debtor on confirmation free and clear of IRS' setoff right). Here, the Department filed a proof of claim admitting it has no setoff rights. Any such rights have been waived.

Furthermore, a creditor with a setoff claim is a secured creditor. *See* § 506(a)(1) ("An allowed claim of a creditor . . . that is subject to setoff under section 553 of this title, is a secured claim to the extent . . .of the amount subject to setoff"); *see also In re Buckner*, 66 F.3d 263, 265 n.3 (10th Cir. 1995) (Baldock, J.) (citing the Code section). Not only did the Department file an unsecured claim, Debtor scheduled the claim as unsecured and treated it as unsecured in his plan.

In addition, the government's obligations to pay Debtor and his nonfiling spouse social security benefits are postpetition debts; benefits are not owed unless and until the recipient lives through the end of each month. *See, e.g., In re Otto*, 509 B.R. 566, 568 (S.D. Tex. 2014), and *In re Rowan*, 15 B.R. 834, 840 (Bankr. N.D. Ohio 1981), aff'd, 747 F.2d 1052 (6th Cir. 1984). To exercise setoff rights, the "fund against which the right of set-off is to be exercised must be in existence as of the commencement of the case." *Rowan*, 15 B.R. at 840.

---

[17] In *Lockhart v. United States*, 546 U.S. 142, 145 (2005), the Supreme Court held that the federal government could offset social security payments to collect defaulted student loan debt. The setoff is limited to 15% of the monthly payment. 31 C.F.R. § 285.4(e), and only after application of a $9,000 exemption. 31 U.S.C. 3716(c)(3)(A)(i) and (ii); *see also In re Regan*, 590 B.R. 567, 575 (Bankr. D.N.M. 2018) (chapter 7 debtor risks post-bankruptcy setoff of social security benefits to collect student loan debt).

Finally, even if the obligations to pay social security benefits were prepetition debts, the automatic stay would prevent the Department from setting off.[18] *See* § 362(a)(7). Plan confirmation would not give the Department the right to exercise setoff—if the Social Security payment rights are estate property, then Debtor would be protected by § 1327(c). Otherwise, Debtor would be protected by § 362(c)(2). Thus, even if the Department had setoff rights, discrimination in the Department's favor is not needed to protect Debtor's future community income.

2. <u>Would the Department be paid from mandatory or optional payments</u>? Under *Bentley*, the mandatory minimum payments must be shared pro rata. Absent unusual circumstances, the Court thinks this is a good rule. Debtor has not carried his burden of showing that the payments to the Department would come from optional, rather than mandatory payments. Debtor's schedules I and J show that his monthly net income is $17.62. If this figure represents Debtor projected disposable income, then Debtor is devoting $57.38 each month to his plan that he is not required to. However, under that scenario, general unsecured creditors ought to share the $17.62 pro rata with the Department. That is not what the plan provides.[19] Moreover, Debtor has not shown that his projected disposable income is only $17.62. It could be $150, $300, or $500. To determine projected disposable income, the Court would need to conduct an evidentiary hearing, at which Debtor (and possibly his non-filing spouse) would testify under oath and be cross-examined by the trustee.

---

[18] Debtor is correct that if the Department had setoff rights and wanted to pursue them, it could do so on his one-half community property interest in his non-filing spouse's social security income. *See Central Adjustment Bureau, Inc. v. Thevenet*, 101 N.M. 612, 616 (S. Ct. 1984).

[19] In any event, $17.62 is not enough of a monthly payment to make the plan feasible.

3. <u>Unusual circumstances</u>. The record does not reveal any unusual circumstances that might be considered in favor of the proposed discriminatory treatment.

The Court concludes that Debtor has not carried his burden of proving that the proposed discrimination is for a reason important enough to justify it. Instead, the Court finds and concludes that the proposed discrimination is motivated by Debtor's wish to pay down his nondischargeable student loan debt with money that ought to go toward his dischargeable debt.

E.   <u>Paying Interest on the Student Loan Debt</u>.

Just as a proposed plan provision must satisfy §§ 1322(b)(1), so must it also satisfy § 1322(b)(10). Debtor's plan proposes to pay 1% interest on the student loan debt, without provision for full payment of all allowed claims. The plan violates 1322(b)(10).

<u>Conclusion</u>

Debtor's $75 a month, 40-month plan is a half-hearted effort to minimize the pain of being in chapter 13 rather than where Debtor wants to be—in his fourth no-asset chapter 7 case. Part of Debtor's design to achieve a somewhat chapter 7-like result is a plan that pays only his lawyer, the trustee, and his nondischargeable student loan debt (with interest). The plan cannot be confirmed because it unfairly discriminates against Debtor's credit card debt and violates the prohibition against paying interest on unsecured debt unless all debts are paid in full. A separate order consistent with this opinion will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Court

Entered: May 24, 2024
Copies to: counsel of record